[Cite as *Duff v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-859.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DENNIS DUFF

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2009-02260

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

DECISION

{¶ 1}  On August 25, 2009, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B).  Plaintiff did not file a response.  The motion is now before the court on a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2}  Civ.R. 56(C) states, in part, as follows:

{¶ 3}  "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor." See also *Gilbert v. Summit County*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

**{¶ 4}** At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Marion Correctional Institution (MCI) pursuant to R.C. 5120.16. Plaintiff's claims arise out of an incident that occurred on June 17, 2008. Plaintiff alleges that shortly before 1:00 p.m., he and other inmates assigned to work in the MCI dining hall finished eating and attempted to take a "smoke break" before beginning work. Plaintiff alleges that Corrections Officer (CO) Marvin Arnett improperly refused the request for a smoke break. Plaintiff alleges that he and several other inmates then proceeded to the captain's office to complain and that the captain permitted the other inmates to have a smoke break, but placed plaintiff in "punitive segregation" for 21 days for rules violations. According to plaintiff, these charges were overturned on appeal. Plaintiff further alleges that his being denied a smoke break came in retaliation for prior complaints that he filed against Arnett. Plaintiff asserts that defendant was negligent in its training and supervision of Arnett and asserts claims for monetary, injunctive, and declaratory relief.

**{¶ 5}** In support of its motion for summary judgment, defendant provided the affidavit of Arnett, wherein he states:

**{¶ 6}** "1. My name is Marvin Arnett and I am employed by [defendant] as a [CO] at [MCI].

**{¶ 7}** "2. I have personal knowledge, and I am competent to testify to the facts contained in this Affidavit.

**{¶ 8}** "3. On June 17, 2008 at 1:13 PM, the sanctioned inmates finished eating in the café. At this time I indicated that they should begin their work in the café. [Plaintiff] asked about a smoke break, to which I answered that he could have a smoke break once his work was completed. [Plaintiff] then indicated that he would liked to see a "white shirt" to which I responded he could see a "white shirt" once his work was completed.

{¶ 9} "4.  [Plaintiff] spoke to the other inmates present about going to see a "white shirt" so that they could get their smoke break.  [Plaintiff] then left the café with about seven other inmates following him.  No work was completed before he left.

{¶ 10} "5.  [Plaintiff] and other sanctioned inmates proceeded to the Captain's Office where they were told they could take their smoke break after their work was completed.

{¶ 11} "6.  I wrote a conduct report against [plaintiff] for violating prison rule #16 and #21.  Attachment A is a true and accurate copy of the conduct report I filled out against [plaintiff].

{¶ 12} "7.  Prison rule #16 is engaging in or encouraging a group demonstration or work stoppage.  Prison rule #21 is disobedience of a direct order.

{¶ 13} "8.  Based on my senses, knowledge, and experience as a [CO], I wrote the conduct report on [plaintiff] for violating the above stated rules.

{¶ 14} "9.  The conduct report was written as part of my duty, on behalf of [defendant], to maintain the safety and security of MCI.

{¶ 15} "10. When I wrote the conduct report, it was my belief that [plaintiff] has violated the rules listed in the conduct report.

{¶ 16} "11. I was properly trained and supervised regarding the writing of conduct reports.

{¶ 17} "12. I followed the policies and procedures of MCI and [defendant] when I wrote the conduct report.

{¶ 18} "13. I maintain a professional demeanor in conducting my duties as [CO]. At no time relative to this Complaint, nor at any other time, have I harassed, retaliated against, or singled out [plaintiff]."

{¶ 19} The court construes plaintiff's claim that Arnett harassed him as a claim for intentional infliction of emotional distress.  In order to sustain such a claim, plaintiff must show that:  "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was

serious." *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82; citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34.

{¶ 20} To constitute conduct sufficient to give rise to a claim of intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters* (1983), 6 Ohio St.3d 369, 375, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment d.

{¶ 21} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  * * *  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim,  'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Id. at 374-375.

{¶ 22} Upon review, the court finds that no reasonable trier of fact could find the conduct alleged by plaintiff to be of such extreme and outrageous character necessary to support a claim for intentional infliction of emotional distress.  Accordingly, plaintiff's claim of "harassment" must fail.

{¶ 23} To the extent that plaintiff asserts that Arnett improperly issued him a conduct report, such a claim raises the issue of discretionary immunity.  The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70.  Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve

internal order and discipline and to maintain institutional security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547.

{¶ 24} The court finds that Arnett's decision to issue a conduct report to plaintiff for the violation of institutional rules is characterized by a high degree of official judgment or discretion and that defendant is therefore entitled to discretionary immunity for claims arising therefrom.

{¶ 25} With regard to plaintiff's retaliation claim, such a claim arises under 42 U.S.C. 1983. *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 91, 1994-Ohio-37; *Deavors v. Ohio Dept. of Rehab. & Corr.* (May 20, 1999), Franklin App. No. 98AP-1105. It is well-settled that such claims and other claims alleging violations of constitutionally guaranteed rights are not actionable in the Court of Claims. See *Thompson v. Southern State Community College* (June 15, 1989), Franklin App. No. 89AP-114; *Burkey v. Southern Ohio Corr. Facility* (1988), 38 Ohio App.3d 170. Accordingly, that claim is DISMISSED for lack of subject matter jurisdiction.

{¶ 26} In order for plaintiff to prevail on a claim for negligent hiring or retention, he must prove: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of such incompetence; 4) the employee's act or omission causing plaintiff's injuries and 5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724.

{¶ 27} Based upon the affidavit provided by defendant, and the fact that plaintiff has not provided the court with any evidence to the contrary, the only reasonable conclusion to draw from the evidence is that defendant's employee, CO Arnett, was not incompetent. Therefore, plaintiff's claim of negligent hiring, training, and supervision fails as a matter of law.

{¶ 28} To the extent that plaintiff asserts claims for injunctive and declaratory relief, that arise out of the same circumstances as his claim for money damages, claim for declaratory and injunctive relief also must fail.

{¶ 29} As stated above, plaintiff did not file a response to defendant's motion, nor did he provide the court with any affidavit or other permissible evidence to support his allegations.

{¶ 30} Civ.R. 56(E) states, in part, as follows:

{¶ 31} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 32} Based upon the foregoing, the court finds that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DENNIS DUFF

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2009-02260

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

<u>JUDGMENT ENTRY</u>

A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Jennifer A. Adair
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Dennis Duff, #447-439
P.O. Box 69
London, Ohio 43140

MR/cmd
Filed February 19, 2010
To S.C. reporter March 3, 2010